15-17-53 EEOC v. AutoZone, Inc. Hello Ms. Coleman. Good morning and may it please the Court. The EEOC requests remand for a new trial for two reasons. One, failure to give the EEOC's requested jury instruction was prejudicial. And two, the jury's verdict was against the manifest weight of the evidence. With respect to the jury instruction, the instruction that the Court gave on essential job functions was correct as far as it went, but it was incomplete. The instruction asked the jury to find the everybody who held that job had to perform exactly the same essential functions. This instruction ignored the law of Miller, which made it clear that when employees operate on an equal level in a team environment, a function that may be essential for the team as a whole is not necessarily essential for any particular individual on that team. Now of course, AutoZone argues that the proposed Miller instruction went beyond the holding of Miller. Did the instruction go too far in instructing the jury that lifting more than 15 pounds was not an essential function of the job? And the second part of my question would be, is it consistent with Section 1630.2N of the EEOC regulations? In answer to the first part of your question, no, the proposed instruction did not ask the jury or did not tell the jury as a matter of law that this was a team environment and that being unable to lift 15 pounds or having to lift 15 pounds or more was not an essential function of the job. The proposed instruction would not have supplanted the instruction that the jury already had, which as I said was correct and did follow the regulation. It would have gone together with that instruction and in context we submit that it was clear that the jury was being asked to find first was this team environment in which not everybody was required to do everything because they operated as a team and then was lifting over 15 pounds one of those tasks that not everybody was required to do. This court in Javier observed that otherwise correct instructions may be inadequate given the facts of any particular case. The facts of this case, the uncontroverted evidence shows that even prior to Ms. Zisch's injury, the employees helped one another with lifting heavy objects. Not only did they help her even prior to her injury, but they helped one another. They helped Mr. Curta, they helped others, they helped women, employees who did not have the strength to lift on their own. The fact that they were helping one another even prior to the injury is consistent with what AutoZone told them to do. AutoZone's employee manual expressly told its employees, do not lift more than you can carry. Ask for help with lifting when you need it. Now AutoZone has tried to explain that away by saying the manual didn't refer to everything in the store, it referred to special order items, but the words in the manual don't say that. The manual on its face applies to lifting that is too much for you. That's how the employees understood the manual and that's how they implemented it. There was a minimum staffing requirement at AutoZone of two to three people in the store at all times. Therefore there was always somebody available to help with heavy lifting when it was necessary. When other people had to stop what they were doing to help Ms. Zisch, the uncontroverted evidence is that she would then go and take over what they had been doing until they could come back and complete what they had been doing. So the effect on AutoZone was absolutely nil to have these employees continue to help her lift in the way that they had helped her lift before. In terms of truck days, which AutoZone emphasizes, again the evidence is uncontroverted that the employees used their strengths. Ms. Zisch had been trained by her manager to step in as acting store manager. In fact she had successfully done that for two or three months when he was out. Therefore she had an understanding of how to do paperwork and other store tasks that her co-workers did not have. So on truck days she and also Mr. Curta typically would spend their time more on the sales floor and also she would do the kinds of paperwork that her colleagues did not even know how to do. AutoZone has overstated the amount of heavy lifting that was required in this job. Now it is true AutoZone introduced a catalog, a long litany of the items that AutoZone carries that weigh more than 50 pounds that on occasion will have to be lifted. And again the EEOC does not dispute that heavy lifting is an essential function of the job for the team as a whole. Obviously there were heavy items and they had to be lifted. However, Ms. Zisch testified that on a typical day she only needed help with lifting once or twice. She did have the use of her left arm, which could lift more than her right arm. Many of the objects that were heavy that were required to be lifted had handles. Most of the batteries had handles and she was able to lift them with her left arm. During planograms when items got moved from one place to another on shelves, the uncontroverted evidence is that she was able to slide the items. She didn't have to lift them. And in fact for safety reasons, heavy items were kept on the lower shelves, not on the higher shelves. All employees, not just Ms. Zisch, but all employees when climbing ladders were required as a safety measure to keep one hand on the rail. I want to go back for a minute to that, to Miller. Did the EEOC argue in closing that the team operated as a whole and that a task was not essential to one worker so long as there was someone else on the team who could perform it? In other words, you didn't receive a Miller instruction, but did you make a Miller argument? And if not, what did you think prevented you from making an argument to the jury? The EEOC did not expressly make a Miller argument. That is to say, no? It's a no, but. Well, that's okay, but was the argument you said not expressly, that's no. Okay, then the answer is no. There was no Miller argument because the jury instruction had been denied. So it no longer made a lot of sense for the EEOC to expressly be framing the argument in that same way. Were you precluded from making the arguments? No, we were not precluded from making the arguments. However, the closing argument did emphasize that ever since even before she was injured, she had not been required to do this heavy lifting on her own, that employees did help one another, and the EEOC asked the jury to consider that. However, again, because the instruction expressly asked the jury to do the essential function of the job, and because there was no dispute that heavy lifting had to happen, the EEOC was prejudiced by the jury's lack of stated permission to look at a team and consider that even though the team had to lift heavy objects, one particular person might not have to do that. I'd also like to emphasize the uniform testimony, uniform in this case, that by managers and by co-workers that helping Ms. Ish to lift was not a problem in any way. She was a star employee, this is what her manager called her. When AutoZone made the decision to fire her, the only stated reason given was we cannot accommodate permanent restriction. The human resources official who said that admitted on the stand that she was new in the job, she had no understanding of the ADA's requirements, she at no point asked any of the managers or any of the people who worked with Ms. Ish how her performance was. It was strictly a decision that she could not accommodate any permanent restriction. Not withstanding that decision, several years later in 2012 AutoZone came out with a new policy, its human resources department came out with a new policy to train managers stating that when you're asked for a reasonable accommodation involving lifting, normally we should accommodate a 10-pound lifting restriction. This was the same human resources manager who said we can't accommodate a permanent restriction was the one on the stand who testified about this new policy. She was asked whether the job had changed in any way between the time when Ms. Ish was fired and the time the policy was implemented in 2012 and she said no, the job is the same. She was asked well if this is a good idea now wouldn't it have been a good idea then and she said yes. So this is relevant to whether requiring someone to lift more than 15 pounds actually is an essential function of the job. We're in a rebuttal time you know. I'm sorry, thank you. That's all right. I'd like to reserve the remainder of my time, thank you. Okay, Mr. Mishlaw. May it please the court. It's an auto parts store. Ms. Ish was a parts sales manager at a retail auto parts store. The whole job involves lifting and carrying auto parts many of which are heavy and that's undisputed. Do we know what the range of the weight is? Judge Ripple, they range from light bulbs that weigh probably less than an ounce to marine batteries, marine boat batteries the way over a well over a hundred and and really anywhere in between. I can't answer your question. Does the record indicate whether there was parts that where all three employees might have to cooperate to move? No, there's no testimony in the record to that effect whatsoever and by the way that the two to three is really two. Okay, the testimony in the record is that most of the time there's two employees in the store. That's what we're talking about. Okay, the EEOC would have this court find that the jury's verdict that lifting more than 15 pounds was an essential function of the job of a parts sales manager in a retail auto parts store is a manifest injustice. Hold on, the team you say is usually two? Yes, and I don't use the word team but yes the number of employees staffing the her definition. Two people? Yes sir. I don't think, I think that it's a really uphill battle in a hard sell to suggest that it's a manifest injustice that shocks the conscience to find that an auto parts person who sells auto parts in a retail store that an essential function is lifting more than 15 pounds. You know your brief repeatedly characterized her restriction as a 15-pound restriction. Of course, that was only for one arm. Yes, that was only for one arm. And the EEOC points to evidence that like Curta, Zitsch, Gorsuch regularly handled more than that weight with her other hand. So first, what was her real restriction when considering both hands? And second, what distinguishes her from Curta? A lot of things. I'm gonna answer the first one first. As you know, the restriction with her dominant hand was 15 pounds. What was the restriction with the other hand? Well there's no restriction per se, but what there also isn't is any testimony in the record that supports exactly what you said, which is what the EEOC says, that Ms. Zitsch regularly lifted things with her other arms. There's not, that word regularly doesn't appear anywhere in the record with respect to what Ms. Zitsch did and didn't do. Now what distinguishes Mr. Curta from Ms. Zitsch? Something really, really big and important. Mr. Curta had no lifting restriction. The jury saw Mr. Curta come into the store. Nice, lanky man comes in and they saw him and they heard him testify about what he could do. He didn't have a 15 pound restriction and the evidence in the record about the sort of assistance that Mr. Curta got was that assistance was available for Mr. Curta, which the EEOC represents, and testimony was that Mr. Curta received help, but not because things were too heavy, because some objects are big and clumsy and it's really difficult to do with one hand. Okay, Mr. Curta is a red herring and a riper red herring there could not be in this case for the EEOC, but the fact of the matter is, again, Mr. Curta had no restrictions. Mr. Curta held a different position, a position in which he would never, ever, ever, ever be in the store alone, as opposed to Ms. Zitsch, who would. This case came down to a credibility contest and the passage that we quote in our brief from the low decision, which appears on page 27 of our brief, which states, there's two very different sides to this story. In short, the defendant gave the jury substantial evidence to support a verdict in its favor. The jury chose to believe the defendant's theory and to reject the plaintiff's story. That was the jury's prerogative. It is the jury's job, not the district court's job or the job of a That's what's happening in this case. That's what this case is all about. It was a swearing contest. It was a case in which the parties couldn't agree where the sun rises and where the sun sets. Yeah, well someone isn't telling the truth about the record. And thank you. And here's what the EEOC said in their closing arguments. We're not disputing... Did I say it was her? No, well, we're not discription would include lifting as one of the things people did. Well, that's an important point because when you look at section 1630 that you cited, Judge Rosener, what is in jobs descriptions is one of those factors that's pertinent and material to the decision of whether or not a task is essential. Being regarded as a stellar employee is not. I'm sure Zish was regarded very favorably, but that's wholly irrelevant to whether or not lifting something that weighs more than 15 pounds is an essential function of the job. I'd like to go on here because it's very important. Closing argument, the EEOC attorney says, of course, and certainly arm requirements existed for the job. I'm assuming she meant lifting requirements. There's no dispute about that, but it's what the law calls a marginal function. I'm on page 26 of the brief, if you're looking. Now, she says, how much time was actually spent doing it? I don't think it's totally clear. Bingo, it's not totally clear. And guess whose job it was to decide it. It was the jury's function to decide it. And there was wickedly conflicting testimony. And the EEOC's key witness, Alfredo Morales, a disgruntled, involuntarily terminated former employee of AutoZone came in and was very quickly and immediately revealed as someone who was a shill for Ms. Zish. She was constantly subject to cross-examination in which his testimony about key critical things, like how often he was at the store to observe this stuff to begin with, was falsified. He testified he was there a lot in the trial, but then he was confronted with his deposition testimony where you see that he wasn't there all that much. He testified that this kind of lifting hardly ever happened. It's very rare, once or twice. But then he was presented with his deposition testimony in which his estimates of how often things happen and whether or not lifting things that weighed in excess of 15 pounds was a lie. He had to say, okay, yeah, I guess if I said that, I guess that's true. It's a credibility contest. And at the end of the closing argument, the EEOC's attorney said, again, how much time was actually spent doing it? I don't think it's totally clear. But Mr. Morales said he thought it would probably be once or twice a day for each part sales manager would do something like that. You heard the testimony and you'll have to decide what you think, whether you agree or not. Mr. Morales was not credible. The jury decided Mr. Morales was not credible. And as this court, I don't need to repeat the boilerplate that comes from so many of the court's opinion. Once the jury makes that decision, it's not the prerogative of the district court on a motion for a new trial or a reviewing court to make a different credibility determination. The Miller instruction. This case isn't Miller. And as we say in our brief, the proposed instruction that was proffered by the EEOC completely misstates the law. And I believe that the argument and the characterization of that instruction today is just really indefensible revisionism. Because the instruction absolutely directs the jury on what it should do if it found that this was a team working environment in which people take on tasks according to their abilities and capacities. It directs them as a matter of law that under those circumstances the task isn't an essential function. And before I go any further, I want to say something about this word task. We're not talking about a discrete task like we had in the Miller case. Working above 25 feet high, dangling over a bridge. That's one task. Another task was sweeping the rubble out from the expressway down beneath. Another one was cutting the grass. These are discrete tasks, some of which involved working at heights, others of which didn't. This case is totally different. In this case, the record is clear that except for perhaps paperwork, every single task that the employees in that AutoZone store do involves heavy lifting. They receive parts that are being returned from customers. They have to carry them somewhere. They get pans of oil that need to be recycled. They need to carry it and dump it somewhere. They stock items. They go and get items for customers. They set up planograms. Everything they do involves heavy lifting. So this isn't a talk about some tasks are an essential function and others aren't. This is a situation where every task involves what the employer regards as an essential function. Let me read you something from Miller. Viewing the evidence and the like reasonably most favorable to Miller, a reasonable jury could find that such work was not an essential function of the job and that Miller was requesting a After all, he was asking only that he be allowed to work as he had worked successfully for several years. Now she had worked successfully for quite a number of years, had she not? She had worked successfully for roughly two years during the period of time in which the company was managing a pending workers' compensation claim. There's a lot of economics involved in the decision about the cost-benefit analysis of what you're going to do here and what you're going to accommodate. In Miller, the court was talking about what was the normal course of the work environment prior to accommodation ever being an issue. And I cite excerpts from the Miller opinion at length on pages, I cite 16. And it's clear that in Miller what we're talking about is all he wanted to be able to do was the same thing the way it was before he ever needed an accommodation. Here the EEOC is saying all she wanted to do is the same thing that she was allowed to do during the period during which we were managing a workers' compensation claim. And when she finally, two years down the road, after multiple trips back and forth and some periods of no restrictions and other periods of different restrictions, finally the doctor said this is it. I'm saying she's reached maximum medical improvement and this is a permanent restriction. And when the HR person said can't accommodate permanent restriction, she was saying can't accommodate a 15-pound permanent restriction. We don't accommodate restrictions, permanent restrictions, period. It has to be read in context. And we can quibble about it, we can interpret it differently, but at the end of the day the jury was the person that made that decision. The jury decided that they understood that what was happening here is we couldn't permanently accommodate a 15-pound lifting restriction. I think we deconstruct the Miller case pretty much at length in our opinion. I think that the key points to understand is that what was going on in Miller is entirely distinct from what's going on here for the reason I just noted about the normal course time period that's the frame of reference. This isn't a case that involves multiple tasks, some of which involve the purported essential function and others don't. This is a case in which everything they do involves the essential function. This is also not a case in which there's any evidence whatsoever of the employees at that AutoZone store allocating chores among themselves. Not a shred of evidence that that ever happened. There's some evidence that occasionally, sometimes, someone needed help lifting, but there's a lot of catalog of parts that opposing counsel referenced and that everyone was required to do these things. There's not a shred of evidence, there's not a single person that ever testified that they helped Ms. Zisch lift ever and there's not a single instance in which Ms. Zisch testified that she was unable to lift something prior to her injury. This statement that she was helped before is really vague, imprecise, and not enough to make the jury decide that there was a real question here that presented an issue as to whether or not this was an essential function. I'm out of time. Thank you. Thank you very much, Ms. Wiesler. Okay, Ms. Coleman, back you come. There is ample evidence and it's uncontroverted in the record that Ms. Zisch and others received help lifting before her injury. No, the times you've used uncontroverted makes me wonder why there was a trial at all. That's a good question, Your Honor. With respect to the proposed instruction, AutoZone is omitting a phrase of that proposed instruction. The jury would have been told in a team environment where team members perform tasks according to their capacities and abilities, and here's the key point, job functions that are not required of all team members are not essential functions. The jury was not going to be told as a matter of law that lifting over 15 pounds is not an essential function. The jury would have decided as a question of fact whether that particular function was not required of all team members and therefore was not an essential function. Now AutoZone has said in its brief and again here today that everything that these employees do involves heavy lifting. That's flatly not true. There is evidence on pages 157 to 58 of the transcript that 90% of the items in the store weighed less than 15 pounds. Things like air fresheners, most of the parts are not heavy. So that in AutoZone's brief and again here today when AutoZone says that most of the job involved lifting, well that's true. Most of it did involve lifting, but most of it did not involve lifting over 15 pounds. Ms. Coleman, your brother indicated that usually there are very many times there's only two, not three people present. Is that right? That's not right. On page 72 of the transcript there is testimony that there were generally, there was a minimum store requirement of two to three people in the store. There is no testimony. It's a minimum of two or three. Well there is no testimony anywhere saying it was normally two. You said the regulation say two or three? Or did it just say two? There is no written regulation that I'm aware of. Was there testimony that the rule was two? There is testimony that the rule was two to three people in the store at all times. There is also testimony about the scheduling, about when people would arrive and when people would leave and how there was overlap. And when you look at that, generally it appears that there were three people, especially during the busy times, the core hours when most customers were coming in. AutoZone has said that Mr. Kerta is a red herring, that he didn't have a lifting restriction, and that the only kind of lifting he needed help with was bulky objects. He had a paralyzed arm. He had a paralyzed arm. So although it is true that he never told AutoZone I have a lifting restriction with one arm, he couldn't lift anything with one arm. With that arm it was zero. And Ms. Zisch had no lifting restriction with her left arm either. It's also not true that he only received help lifting bulky objects. He himself testified on page 556, quote, that he was unable to do any heavy lifting when he waited on customers. So far from being a red herring, he really has a parallel situation. There also is uncontroverted evidence that these employees really were never in the store alone. Ms. Zisch testified that there was one time in her four years of employment that she was in the store alone for any time at all. It was during a horrific snowstorm. She was the only one who could get to the store, and she was there for approximately three hours. There's no evidence that any customer ever came during that time. Other than that, there really is no suggestion that anybody was ever in the store alone. And if, in fact, they had been, it would have violated company policy. I'd like to emphasize again, as I said earlier, that the uncontroverted evidence is that on any particular day she needed help with lifting only once or twice. AutoZone has conceded and conceded again today that there is evidence that occasionally people needed help with lifting. Well, once or twice a day really is occasionally. It is not the constant kind of heavy lifting that AutoZone is testifying to. I see that my time is up unless there are further questions. Thank you. Thanks to both parties, and the case will be taken under advisement.